UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


PAUL A. COREY & ASSOCIATES, INC.,

      Plaintiff,

  v.                           Case No. 2:18-cv-366
                               Magistrate Judge Chelsey M. Vascura

GREAT-WEST LIFE & ANNUITY
INSURANCE COMPANY,

      Defendant.


**OPINION AND ORDER**

This matter is before the Court upon Defendant, Great-West Life & Annuity Insurance Company's, Motion for Judgment on the Pleadings ("Great-West's Motion") (ECF No. 11). Plaintiff, Paul. A. Corey and Associates, Inc., has further moved to convert Great-West's Motion to a motion for summary judgment and for additional time to complete discovery in furtherance of summary judgment briefing ("Corey's Motion") (ECF No. 14). The motions are both fully briefed and ripe for disposition. For the following reasons, Great-West's Motion is **DENIED**, and Corey's Motion is **DENIED AS MOOT**.

          **I.**        **BACKGROUND**

On October 15, 1984, Independent Plan Coordinators, Inc. ("IPC"), Great-West Life & Annuity Insurance Company's ("Great-West") predecessor in interest, entered into an agreement (the "Agreement") with Paul A. Corey and Associates, Inc. ("Corey") whereby Corey would provide "consultation services to IPC" in exchange for a monthly retainer in the amount of 5% of the gross compensation received by IPC from the County Commissioners Association of Ohio

("CCAO"). (Compl. ¶ 8, ECF No. 4; Agreement, ECF No. 4, PAGEID #44.) Although both parties assert that this Agreement was reached in 1984 to compensate Corey for its assistance in securing CCAO as a client for IPC, Corey's work in this regard is mentioned nowhere in the Agreement. (*Id.*; Great-West's Mot. 1, ECF No. 11.) After several addendums, as of April 9, 1998, the Agreement called for a flat monthly retainer of $1,800 per month and was to remain in effect for as long as CCAO remained IPC's client. (Addendum II, ECF No. 4, PAGEID #46; Addendum IV, ECF No. 4, PAGEID #48.)

Great-West assumed the obligations of IPC under the Agreement in 2002. (Compl. ¶ 14, ECF No. 4.) From 2002 to 2017, Great-West continued to pay Corey the monthly retainer, and Corey continued to provide consulting services to Great-West; however, Corey discontinued services to Great-West on June 30, 2017, as Great-West did not pay any of Corey's invoices after June 1, 2017. (Compl. ¶ 15, ECF No. 4.)

It is Great-West's position that rules and regulations promulgated by the Financial Industry Regulatory Authority ("FINRA") and the U.S. Securities and Exchange Commission ("SEC") have made performance under the Agreement illegal, thereby barring Corey's claims. (Ans. ¶ 15, ECF No. 6.) The SEC began enforcing 17 C.F.R. § 275.206(4)-5 (the "pay-to-play" rule) in 2017. (*Id.*) The pay-to-play rule prohibits investment advisors from "provid[ing] or agree[ing] to provide, directly or indirectly, payment to any person to solicit a government entity for investment advisory services on behalf of such investment adviser," unless that person is a "regulated person" or principal or employee of the investment adviser. 17 C.F.R. § 275.206(4)-5(a)(2).

Advised Assets Group, LLC ("AAG") is a wholly-owned Great-West subsidiary and a registered investment adviser. (Reply 1, ECF No. 13.) Great-West contends that the purpose of

2

the Agreement is for Corey to continue soliciting business for AAG from CCAO. Great-West further contends that CCAO is a government entity. (*Id.* at 2.) Great-West therefore maintains that because the pay-to-play rule bans payments either "directly or indirectly" to third parties, it cannot lawfully continue to pay Corey to solicit business from CCAO for AAG. (*Id.*) In May 2017, Great-West informed Corey of its position via letter and terminated the Agreement. (Ans. ¶ 15, ECF No. 6)

Corey commenced an action in the Court of Common Pleas for Franklin County, Ohio on March 17, 2018, asserting claims for (1) account, (2) breach of contract, (3) unjust enrichment, (4) quantum meruit/quantum valebant, (5) promissory estoppel, and (6) declaratory judgment. (Compl. ¶¶ 21–38, ECF No. 4.) Great-West removed the action to this Court on April 20, 2018. Great-West now moves for judgment on the pleadings on all of Corey's claims.

## II. STANDARD OF REVIEW

"Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Fed.R.Civ.P. 12(b)(6)." *McGath v. Hamilton Local Sch. Dist.*, 848 F. Supp. 2d 831, 836 (S.D. Ohio 2012) (citing *Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007)). In other words, "the Court will grant a motion for judgment on the pleadings if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim." *Gascho v. Glob.*

*Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 717 (S.D. Ohio 2013) (citing *Little v. UNUMProvident Corp.*, 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002)).

In ruling on a motion for judgment on the pleadings, "the court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits." *McGath*, 848 F. Supp. 2d at 836 (citing Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 7(a); *Housing Authority Risk Retention Grp., Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004)). The Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Id.* (quoting *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)).

### III.  ANALYSIS

**A.  FINRA's pay-to-play rule does not bar enforcement of the Agreement.**

Great-West contends that FINRA's pay-to-play rule prohibits enforcement of the Agreement between it and Corey because the Agreement requires Great-West to make indirect payments to Corey to solicit the CCAO, a government entity, for investment advisory services on behalf of Great-West. 17 C.F.R. § 275.206(4)-5. Because all of Corey's claims stem from enforcement the Agreement, Great-West asserts that all of Corey's claims must fail on this basis.

Ohio law prevents enforcement of illegal contracts. *Massillon Sav. & Loan Co. v. Imperial Fin. Co.*, 151 N.E. 645, 647 (Ohio 1926); *Jackson Purchase Rural Elec. Co-op. Ass'n v. Local Union 816, Int'l Bhd. of Elec. Workers*, 646 F.2d 264, 267 (6th Cir. 1981) ("[T]here is a strong presumption that agreements in violation of a statute will not be sanctioned by the courts."). Likewise, if a contract is legal when created, but subsequent legislation makes performance under that contract illegal, a party cannot recover for its breach. *Massillon Sav. & Loan Co.*, 151 N.E. at 647.

However, the Agreement's plain language does not implicate the pay-to-play rule. Great-West asserts that its "predecessor in interest hired Corey to solicit retirement plan record-keeping and investment advisory services from an association of Ohio county commissioners." (Great-West's Mot. 1, ECF No. 11.) But the original Agreement, dated October 15, 1984, provides that "*[Corey] shall provide consultation services to IPC* [Great-West's predecessor in interest] on an 'as needed' basis. *These professional services shall consist primarily of consultations with IPC's principal officers* in such areas as public/government relations, marketing techniques and such other similar areas." (Agreement, ECF No. 4, PAGEID #44) (emphasis added). The original Agreement goes on to provide that "IPC, in turn, shall *compensate [Corey] for this essential counsel* at the rate of 5 percent of Gross Compensation received on CCAO, or any other case, as added by addendum . . . ." (*Id.*) (emphasis added). Thus, while the amount of payment under the Agreement was initially tied to compensation received by IPC on the CCAO account, the Agreement requires IPC to pay Corey for consulting with IPC officers, not for soliciting CCAO or any other government entity.

The five addendums to the Agreement do not alter the services Corey was to provide to IPC and its successors. The second addendum changed the duration of this contract to an "on-going" contract, "ending only when IPC of Ohio's agreement, dated February 22, 1985, with THE COUNTY COMMISSIONERS' ASSOCIATION OF OHIO (CCAO) ceases to be in effect, either by cancellation or failure to renew, in accordance with the terms of said Agreement." (Addendum II, ECF No. 4, PAGEID #46.) But most of the addendums change only the amount of the payments, ultimately requiring a "level monthly retainer of $1800" as of April 9, 1998. (Addendum IV, ECF No. 4, PAGEID #48.) As to Corey's contractual obligations, the

5

addendums do no more than mention that the payments by IPC or its successors are for "professional services rendered." (Addendums I–V, ECF No. 4, PAGEID #45–50.)[1]

Thus, it is true that the amount of IPC's payments to Corey under the Agreement was initially linked to compensation received by IPC on the CCAO account, and it was later amended to a flat monthly retainer for as long as the CCAO agreement remained in effect. But the plain language of the Agreement requires payment to Corey in exchange for professional services consisting of *consultation with IPC* and its successors. There is no indication in the Agreement that the payments were consideration for ongoing "solicit[ation of] a government entity for investment advisory services on behalf of" IPC or its successors as prohibited by 17 C.F.R. § 275.206(4)-5.

Great-West anticipated that Corey would argue that the Agreement fell outside the scope of the pay-to-play rule and counters that Corey's allegations that it provides "various consulting and lobbying services" is an unwarranted factual inference that the Court need not accept as true when determining a Rule 12(c) motion. (Great-West's Mot. 12, ECF No. 11.) According to Great-West, "a close look at the Complaint reveals Corey performed a singular service under the [ ] Agreement: it solicited business from the CCAO for Great-West and its predecessors in interest." (*Id.*) However, the Court need not make any factual inferences about the content of the Agreement because it is attached to Corey's Complaint. (ECF No. 4, PAGEID #44–50.) And "[w]here the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir.

---

[1] The fourth addendum also provides that "[p]ursuant to NPC consummating an agreement to provide deferred compensation services to the members of the Ohio Township Association (OTA) and the Ohio Municipal League (OML), NPC will increase PACA's monthly retainer equal to five percent (5%) of all revenues derived from an agreement between NPC and OTA and/or OML." (ECF No. 4, PAGEID #48.) However, Great-West does not rely on this provision or any relationship with either OTA or OML as grounds for terminating the Agreement.

2008) (quoting *City of St. Marys v. Auglaize Cty. Bd. of Comm'rs*, 115 Ohio St.3d 387, 875 N.E.2d 561, 566 (2007)).

Even if it was true that the professional services Corey actually provided to Great-West until 2017 primarily consisted of soliciting the CCAO on Great-West's behalf, there is nothing in the Agreement that conditions payment on Corey's ongoing solicitation of the CCAO. And the SEC has clarified that, even if an agreement involved soliciting of government entities by a third-party prior to the compliance date of the pay-to-play rule, continued "trailing payments" under such an agreement would not be prohibited so long as the third-party does not solicit the government entity after the compliance date. U.S. Securities and Exchange Commission, *Staff Responses to Questions About the Pay to Play Rule*, (March 22, 2011), https://www.sec.gov/divisions/investment/pay-to-play-faq.htm.

Great-West and its predecessors may not have been interested in paying Corey for anything but soliciting the CCAO, but that limitation is not contained in the Agreement. Courts will not rewrite a contract simply because a party entered into a bad deal. *N. Buckeye Edn. Council Grp. Health Benefits Plan v. Lawson*, 103 Ohio St.3d 188, 814 N.E.2d 1210, 1216 (Ohio 2004). Accordingly, Corey's claims are not barred on grounds that enforcement of the Agreement is prohibited by FINRA's pay-to-play rule.[2]

**B.    Great-West's anticipatory breach permits Corey to recover in the absence of further performance by Corey.**

Great-West further argues that Corey cannot recover compensation for any period following June 30, 2017, when Corey admittedly stopped providing consulting services to Great-

---

[2] The parties also dispute whether Great-West and/or AAG qualify as a "member," "registered investment advisor," or "covered associate" and whether the CCAO is a "government entity" under § 275.206(4)-5. Because the Court finds the Agreement does not require Corey's solicitation of the CCAO, it need not decide these issues.

7

West.  (Compl. ¶ 15, ECF No. 4.)  According to Great-West, further compensation would "unjustly" allow Corey "to get something for nothing."  (Great-West's Mot. 14, ECF No. 11.)  However, Corey alleges that it stopped providing services to Great-West because of Great-West's failure to pay any of Corey's invoices after June 1, 2017.  (*Id.*)  Great-West argues that it was justified in ceasing payments to Corey due to the pay-to-play rule; however, as the Court has explained, the pay-to-play rule does not apply to the Agreement and therefore does not provide a basis for Great-West to repudiate its contractual obligations.  Great-West has not provided any other justification for ceasing payments to Corey.

Accordingly, when Great-West informed Corey that it would no longer make payments under the Agreement, it anticipatorily breached the Agreement.  Corey was thereby relieved of its obligations to provide further services to Great-West and permitted to immediately sue for breach of contract.  *Allen, Heaton & McDonald v. Castle Farm Amusement Co.*, 151 Ohio St. 522, 86 N.E.2d 782, 783 (1949) (defendant's repudiation of the contract relieved plaintiff of its performance obligations and permitted suit for total breach); *Brunetto v. Curtis*, 10th Dist. Franklin No. 10AP–799, 2011-Ohio-1610, ¶ 14 (same); *Harwood v. Avaya Inc.*, No. C2-05-828, 2007 WL 2407054, at *7–8 (S.D. Ohio Aug. 22, 2007) (same).  Corey may therefore recover damages in the amount of "any compensation [Corey] would have received if the contract had been performed, less the value to [Corey] of its being relieved from performance."  *Allen, Heaton & McDonald*, 151 Ohio St. 522, 86 N.E.2d at 783.

Based upon the foregoing, the Court also declines, at this juncture, to dismiss Corey's equitable claims.  Although success on its breach-of-contract claim would preclude Corey from pursuing its equitable claims, it is nevertheless entitled to plead alternative theories of recovery.  *See, e.g., Orum Stair, LLC v. GJJG Ents., LLC*, 72 N.E.3d 190, 202 (Ohio App. 10th Dist. 2016)

(affirming trial Court's application of the general principle "a plaintiff is entitled to only a single recovery of damages even though such plaintiff may be entitled to plead alternative theories of recovery" (citations omitted)); *Thompson Thrift Construction v. Lynn*, 89 N.E. 249, 266 (Ohio App. 5th Dis. 2017) (citation omitted).

**C.     Corey's Motion is moot.**

After Great-West's Motion for Judgment on the Pleadings was fully briefed, Corey moved the Court to convert Great-West's Motion to a motion for summary judgment and for an extension of time to conduct discovery under Fed. R. Civ. P. 56(d) in furtherance of summary judgment briefing. (ECF No. 14.) However, the Court finds it unnecessary to consult any materials outside the pleadings to resolve Great-West's Motion, and therefore, conversion of the motion to one for summary judgment is unwarranted. *See* Fed. R. Civ. P. 12(d). Further, as recognized by Corey, "the denial of Defendant's Motion for Judgment on the Pleadings would serve to moot the instant motion." (Corey's Mot. 2, ECF No. 14.) As the Court has denied Great-West's Motion, Corey's Motion is moot.

## IV.     DISPOSITION

For the foregoing reasons, Great-West's Motion for Judgment on the Pleadings is **DENIED**, and Corey's Motion to convert Great-West's Motion to one for summary judgment and for an extension of time to conduct discovery under Fed. R. Civ. P. 56(d) is **DENIED AS MOOT**.

The Clerk shall remove Documents 11 and 14 from the Court's pending motions list.

**IT IS SO ORDERED**.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE